UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARQUES HARROLD,

    Plaintiff,

v.

                      Civil Action 2:09-cv-01100
                      Judge Michael H. Watson
                      Magistrate Judge E.A. Preston Deavers

BMW FINANCIAL SERVICES NA, LLC,

    Defendant.

## DISCOVERY ORDER

Plaintiff, Marques Harrold, brings this employment action against Defendant, BMW Financial Services NA, LLC, alleging that Defendant permanently laid him off instead of offering him alternate employment as it did with his similarly-situated co-workers. He asserts that Defendant refused to offer him alternative employment because (1) it perceived him as disabled, violating Ohio Revised Code § 4112.01 *et seq.*, and the Americans with Disability Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); (2) he exercised his rights to request intermittent leave, violating the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"); and (3) he extensively used medical benefits, violating the Employee Retirement Income Security Act of 1974, 28 U.S.C. § 1001 *et seq.* ("ERISA"). This matter is before the Court for consideration of Defendant's Motion to Compel Plaintiff to Execute and Return HIPAA Releases (ECF No. 17) and Plaintiff's Motions to Compel Discovery Responses (ECF Nos. 22 and 27). For the reasons that follow, the Court **DENIES** Defendant's Motion to Compel (ECF No. 17), **GRANTS** Plaintiff's first Motion to Compel (ECF No. 22), and **ORDERS** additional briefing on Plaintiff's second Motion to Compel (ECF No. 27).

I.

Determining the scope of discovery is within this Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). As the United States Court of Appeals for the Sixth Circuit has recognized, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). In particular, discovery is more liberal than the trial setting, as Federal Rule of Civil Procedure 26(b) allows any "line of interrogation [that] is reasonably calculated to lead to the discovery of admissible evidence." *Id.* (quoting *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970)). In other terms, the Court construes discovery under Rule 26 "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). In considering the scope of discovery, the Court may balance a plaintiff's "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am. Axle and Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009) (quoting *Bush*, 161 F.3d at 367).

II.

**A.    Defendant's Motion to Compel**

Defendant requests that this Court issue an order compelling Plaintiff to execute and return to Defendant's counsel an Authorization for Release of Medical Records pursuant to the Health Insurance Portability and Accountability Act ("HIPAA Release"). Defendant initially asked for Plaintiff to execute and return a HIPAA Release in April 2010. Plaintiff's counsel responded that Plaintiff would not agree to a direct production of medical records from his physicians. He further indicated that he had already ordered Plaintiff's medical records from all of the providers listed in the discovery and upon receipt, would produce everything he believed

2

to be relevant, creating a log for any documents withheld. Thereafter, to address any privacy concerns, the parties agreed to and filed a Stipulated Protective Order, which this Court approved in May 2010. On May 25, 2010, Plaintiff's counsel sent Defendant's counsel 40 pages of medical records, representing that these records constituted the entirety of Plaintiff's medical records. Defendant subsequently filed the subject Motion to Compel.

In support of its Motion to Compel, Defendant asserts that Plaintiff's medical records are indisputably relevant and necessary to its defense. Defendant maintains that Plaintiff's suggested "selective production" approach is unreasonable given that "neither Plaintiff nor his counsel has the expertise necessary to decide what portions of Plaintiff's medical file are relevant to this matter." (Def.'s Mot. to Compel 5–6, ECF No. 18.) Defendant further explains that access to Plaintiff's complete medical file is imperative given Plaintiff's allegations of disability and his emotional distress claim. Finally, Defendant expresses its incredulity that the 40 pages of documents could constitute the entirety of the medical records that exist. Defendant concludes that "[i]t is impossible for [Defendant] to adequately evaluate [the issues presented] working only from the 40 pages of documents that Plaintiff and his attorney have deemed relevant and produced." (*Id*. at 7.)

Plaintiff does not challenge the relevancy of his medical records. Plaintiff instead asserts that Defendant's arguments are moot because he provided all of the medical documents requested, withholding nothing. Plaintiff supports his representations with his counsel's sworn affidavit in which he avers that he has produced all of Plaintiff's medical records and a copy of the HIPAA Release he executed for the release of his medical records to his counsel. Consistent with Plaintiff's counsel's representations, the HIPAA Release demonstrates that Plaintiff requested all of his records. In identifying the "Specific Reports to Be Disclosed," Plaintiff's

3

counsel checked every box on the form, even checking a box labeled "Other," writing on the line next to the box: "Any and all medical records, consultation reports, correspondence, or any record contained in my file."  (HIPAA Release, ECF No. 21-1.)

Under the circumstances of this case, the Court finds that Defendant's Motion to Compel is without merit.  The Court agrees that Plaintiff's production of all his medical records renders Defendant's arguments moot.  Thus, it is unnecessary for the Court to address Defendant's concerns that Plaintiff's counsel or this Court lacks the expertise necessary to discern which documents from Plaintiff's medical file are relevant to this action.  With regard to Defendant's expressed difficulty in evaluating the issues presented in this case from the 40 pages provided, as Plaintiff noted, he cannot be expected to produce documents that do not exist.  Plaintiff's counsel, in an affidavit, states that he obtained only 40 pages from OSU and that he produced them all, witholding nothing.  (Reeve Aff. ¶ 6 at 2.)  Defendant has neither argued nor demonstrated that the HIPAA Release that Plaintiff executed is not as comprehensive as it should be.  Regardless, Defendant is not constrained, as he implies, to Plaintiff's medical records in evaluating the issues presented in this case.

Finally, the Court declines to award Plaintiff his attorneys' fees expended in defending this motion pursuant to Federal Rule of Civil Procedure 37(a)(5)(B).  The Court finds that given the nature of Plaintiff's condition, Defendant reasonably questioned that only 40 pages of medical records exist.  Defendant did not have the benefit of Plaintiff's counsel's affidavit and a copy of the HIPAA Release Plaintiff executed for the release of his medical records to his counsel until after Defendant filed the instant motion.

**B.     Plaintiff's First Motion to Compel**

Plaintiff's first Motion to Compel is based upon discovery requests relating to his claim of ERISA discrimination. Plaintiff alleges that his extensive and expensive use of Defendant's medical benefits plan, and the expected continuation of such usage due to his HIV positive status, was a motivating factor in BMW's decision to lay him off rather than to offer him alternate employment as it had to many of his similarly-situated co-workers. The following interrogatories are at issue:

1. Set forth any and all dates after June 1, 2008, upon which Defendant received information regarding renewal of, and costs of renewal of, any employee health insurance policies, including but not limited to stop-loss coverage related to health insurance.

2. Set forth the date(s) (if any) on which Plaintiff was named (in any manner, including by any identifying number) in any letter from any insurer related to Defendant's employee health insurance benefits.

(Defendant's Answers to Plaintiff's Second Set of Interrogatories 2–6, ECF No. 22-1.) Plaintiff also requests this same information for any employee short-term and long-term disability benefits policies. In addition, the following document requests are at issue:

1. Produce each and every document that shows or refers to any communication or information regarding renewal of, and/or costs of renewal of, any employee health insurance policies, including but not limited to stop-loss coverage related to health insurance, after June 1, 2008.

2. Produce each and every document that shows or refers to Plaintiff in any manner, including by any identifying number, regarding renewal of, and/or the cost of renewal of, Defendant's employee health insurance benefits.

\*     \*     \*

> 8. Produce each and every document from any source that any employee of Defendant accessed and/or circulated internally after January 1, 2007, that shows or refers in any manner to how to reduce employee welfare benefits costs in regards to any employee welfare benefits plan, including, but not limited to health insurance benefits, short-term disability benefits, and/or long-term disability benefits, and any stop-loss insurance related to any of the aforementioned benefits.

(Defendant's Response to Plaintiff's Second Request for Production of Documents 2–9, ECF No. 22-1.) Plaintiff also makes similar requests for documents concerning Defendant's employee short-term and long-term disability benefits policies.

Defendant asserts that the information Plaintiff seeks is not relevant. In addition, Defendant submits that production of the requested information would be unduly burdensome. The Court considers Defendant's arguments in turn.

### 1. Relevancy

ERISA Section 510 prohibits an employer from discharging, fining, suspending, expelling, disciplining, or discriminating against a participant "for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ." 29 U.S.C. § 1140. In this case, to survive summary judgment, Plaintiff must demonstrate that Defendant discriminated against him for his extensive use of its medical benefits plan or for the purpose of interfering with his expected usage of its benefits plans. *See Crawford v. TRW Automotive U.S. LLC*, 560 F.3d 607, 613 (6th Cir. 2009) (noting that to defeat summary judgment in an ERISA Section 510 action, the plaintiffs had to demonstrate their employer had "fired them for the purpose of interfering with the attainment of their retirement benefits"). Plaintiff can make such showing through either direct or circumstantial evidence, utilizing a burden-shifting framework for the latter. *See id*. "In the ERISA context, the

burden-shifting framework first requires the plaintiffs to establish their 'prima facie' case 'by showing the existence of (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.'" *Id*. (quoting *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997)).

Here, the discovery at issue indisputably relates to the costs of Defendant's ERISA welfare benefits. A review of case law reveals many instances in which employers have allegedly discharged employees in violation of ERISA § 510 in retaliation for such employees increasing the costs of benefits. *See, e.g.*, *Jackson v. Service Engineering, Inc.*, 96 F.Supp. 2d 873, 878–79 (S.D. Ind. 2000) (finding that the plaintiff's ERISA and ADA claims survived summary judgment where a reasonable trier of fact could find that the defendant fired the plaintiff because of the expenses it had incurred and to remove the burden of future medical expenses); *Hirsch v. National Mall & Service, Inc.*, 989 F.Supp. 977, 983–84 (N.D. Ill. 1997) (denying summary judgment on ERISA Section 510 claim where the defendants were aware of and concerned about their rising health insurance premiums and the plaintiff's cancer and had discussed that termination of the plaintiff's health could result in savings for the company). Thus, whether Plaintiff's condition caused a rise in the cost of Defendant's benefits plans is relevant in this action.

Nevertheless, Defendant maintains that the discovery sought is not relevant because "Plaintiff does not claim he used [Defendant's] benefits and, in fact, Plaintiff never even took a single day of FMLA time." (Def.'s Opp. to Pl.'s Mot. to Compel 3, ECF No. 23.) Defendant also contends that Plaintiff cannot demonstrate the relevance of the information and documents related to its short-term and long-term disability benefit plans, noting that these benefit plans are not mentioned in Plaintiff's First Amended Complaint.

7

Defendant's assertion that Plaintiff did not apply to use Defendant's benefits is inaccurate. In his Amended Complaint, Plaintiff alleges that after he informed his supervisor and Associate Relations in detail of "the costs associated with the necessary treatment" of his HIV status, he was retaliated against. (Am. Compl. ¶¶ 9, 10, 13, 15–19.) He also alleges that Defendant discriminated against him due to his "extensive and expensive use of Defendant's medical benefits plan, and the expected continuation of such usage." (*Id*. at ¶ 29.) He further alleges that he requested FMLA forms for intermittent leave and that Defendant subsequently designated him as eligible and qualified for intermittent FMLA leave. (*Id*. at ¶¶ 11–12.) Thus, the Court rejects Defendant's assertion that the information Plaintiff requests is not relevant.

The Court also rejects Defendant's assertion that cost-related discovery concerning its short-term and long-term disability benefit plans is not relevant because those plans are not mentioned in Plaintiff's First Amended Complaint. Plaintiff has alleged that the cost of his ERISA welfare benefits caused Defendant to discharge him from employment. In addition to the health insurance plan, Plaintiff's HIV-positive status could arguably impact other welfare benefits, including Defendant's short-term and long-term disability plans. Thus, given Federal Rule of Civil Procedure 8(a)(2)'s liberal pleading standards, and the necessarily broad construction Rule 26 is due, the Court finds that Plaintiff may pursue the contemplated cost-related discovery concerning Defendant's short-term and long-term disability plans. *See Wysong v. Dow Chem. Co.*, 503 F.3d 441, 446 (6th Cir. 2007) (finding that the plaintiff was not "boxed in" to one theory of violation of FMLA because of the complaint because such "an overly rigid approach . . . stands in conflict with our notice-pleading system"); *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 335–36 (6th Cir. 2009) (same).

### 2. Unduly Burdensome

Defendant concedes that Plaintiff's requests are adequately limited in time, but challenges their scope. Specifically, Defendant asserts that gathering the information Plaintiff requests "would require an unreasonable and substantial amount of time, effort and resources by [Defendant] and would yield little or no information relevant to Plaintiff's claims" because it "does not have a central repository which houses the information" Plaintiff seeks. (Def.'s Opp. to Pl.'s Mot. to Compel 5, ECF No. 23.)

"'[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.'" *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 457 (6th Cir. 2008) (quoting *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007). "Specifically, the Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Surles*, 474 F.3d at 305 (quoting Fed. R.Civ. P. 26(b)(2)(C)(iii)).

The Court concludes that Defendant has not demonstrated that provision of the requested information would prove unduly burdensome. In support of its burdensomeness argument, Defendant asserts only that it lacks a central repository housing the requested information. Beyond asserting broad allegations of burdensomeness and impossibility, Defendant fails to offer specific examples or evidence revealing the nature of its burden. Nor has Defendant proposed alternatives enabling some degree of production, such as limiting the search to certain offices or files. Thus, the Court rejects Defendant's assertion that Plaintiff's requests are unduly

burdensome.

**C.     Plaintiff's Second Motion to Compel**

Plaintiff's second motion to compel concerns the following document request:

> Produce each and every document contained in any personnel file, medical file, or other file (including those kept by any employee of Defendant) regarding any or all of the eight (8) employees under the supervision of Paula Goble who were offered alternative positions, as set forth in ¶ 19 of Defendant's Answer to Plaintiff's First Amended Complaint.

(Def.'s Response to Pl.'s First Req. for Production of Docs. 24, ECF No. 27-1.)

Defendant asserts that the information contained in the employees' personnel and other similar files is not relevant to this litigation.  In addition, Defendant maintains that the value of the information does not outweigh the privacy interests of the affected parties.  Finally, Defendant submits that the discovery request is overly broad.  The Court considers Defendant's arguments in turn.

**1.     Relevancy**

Defendant contends that the information requested is not relevant because the employees to whom Plaintiff seeks to compare himself were not similarly situated.  Defendant explains that Plaintiff was the only Inbound Call Center Vendor Manager employed in Defendant's facility.  Defendant states that the record evidence demonstrates that it eliminated Plaintiff's position because his job duties could be absorbed by other positions.  Defendant further asserts that even though the employees Plaintiff seeks to compare himself also reported to Ms. Goble, they did not have the same job titles or job duties.  Defendant also notes that the employees offered alternative positions had been working for Defendant longer than Plaintiff had, and that this was one of Defendant's considerations.

The Court finds Defendant's relevancy arguments unavailing.  The parties agree that

Plaintiff must demonstrate that the subject employees are similarly situated in order to establish his *prima facie* discrimination case. The definition of "similarly situated" is less restrictive than Defendant suggests. Plaintiff correctly notes that the similarly situated test is one in which the comparison is made on the basis of all relevant aspects rather than trying to establish an "exact correlation with the employee receiving more favorable treatment." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

In this case, the subject employees were all management level employees immediately supervised by Ms. Goble who had their positions eliminated by the layoff. In his Reply, Plaintiff indicated that through depositions, he has ascertained the following information:

1. A two-plus month layoff/reorganization process eventually designated a group of positions that were to be eliminated, and many new positions (some "hybrids," some not) were also created. This process was done on a departmental level. The department that Harrold and his immediate supervisor Paula Goble served in was under the direction of Vice President Kristin Zerbst. That department contained six subdivisions all supervised by managers whose positions were equal to that of Goble;

2. Near the end of the layoff/reorganization process, names were attached to the positions that were to be eliminated, and all of those names were posted (via a projection screen) for the six (6) managers at the same level as Goble within her department to choose from to see if they wanted to "redeploy" those persons to any of the new job assignments that were created by the reorganization. At least twenty (20) names, including Harrold's name, appeared on this screen for possible redeployment; and,

3. The persons listed in Defendant's Responses to Plaintiff's First Set of Interrogatories No. 19 were under Goble's supervision when their positions were eliminated and they were then chosen for "redeployment," i.e. to be offered continued employment in another job, rather than being laid off. Harrold's position, under Goble's supervision, was chosen for elimination, but he was not chosen for redeployment.

(Def.'s Reply 2, ECF No. 32.) Plaintiff's theory is that the requested information will allow him to determine if these employees are in any of the same protected classes and whether they were

11

more or less qualified than he was for the positions to which they were moved.

The Court concludes that the characteristics and qualifications of the eight persons under Ms. Goble's supervision who where chosen for redeployment are within the scope of properly discoverable facts in this matter. The Court acknowledges that Defendant has identified differences that raise questions concerning the degree of similarity. These questions, however, are not properly considered at this stage of the litigation and should instead be addressed in a motion for summary judgment or determined by the trier of fact at trial.

### 2. Privacy Interests and Overbreadth

Defendant asserts that the value of the information in the requested personnel files does not outweigh the privacy interests of the affected parties. Defendant does not discuss what types of documents are contained in its personnel files. Instead, Defendant asserts generally that such files "routinely contain a variety of information which is both personal to the employee and irrelevant to the litigation." (Def.'s Opp. 3, ECF No. 31.) For this reason, Defendant maintains that Plaintiff's request for any and all documents contained in any file regarding the eight employees is overly broad.

The Court acknowledges that Defendant has a valid interest in maintaining the privacy of these eight nonparty employees. The Court also acknowledges that it is likely that these files contain personal information that is not relevant to the litigation. *See Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 365 (6th Cir. 1999) ("[P]ersonnel files might contain highly personal information such as an individual's unlisted address and telephone number, marital status, wage information, medical background, credit history (such as requests for garnishment of wages), and other work-related problems unrelated to [a] plaintiff's claims."). For this reason, the Court declines to order production simply on the personnel file designation. Rather, the Court intends

to limit production to only those documents relevant to this action. To do so, the Court requires supplemental briefing on this issue.

Accordingly, the Court **ORDERS** supplemental briefing on this issue. Defendant must file, **WITHIN FOURTEEN DAYS**, a brief detailing the contents of the requested files on a category-by-category basis, setting forth its position on whether the information should be produced and if so, what level of protection it should be afforded. Plaintiff shall file his response **WITHIN SEVEN DAYS** of Defendant's brief, setting forth which categories of documents he contends should be produced and why such categories are relevant. There shall be no reply. Alternatively, if Plaintiff and Defendant can reach an agreement on this issue within fourteen days of the date of this Order—and the Court strongly encourages such a compromise—the parties shall notify the Court of such.[1] In their communications, the Court encourages the parties to consider limiting the disclosure of highly sensitive documents for counsel's eyes only.

### III.

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Compel (ECF No. 17) and **GRANTS** Plaintiff's first Motion to Compel (ECF No. 22). The Court **ORDERS** Defendant to produce, **WITHIN FOURTEEN DAYS**, the information responsive to the discovery requests that were the subject of Plaintiff's first Motion to Compel, except that

---

[1] Indeed Local Civil Rule 37.1 requires the parties, prior to bringing a motion, to first exhaust among themselves all extrajudicial means for resolving differences. S.D. Ohio Civ. R. 37.1. The Local Rule also encourages the parties to seek an informal telephone conference with the judicial officer in lieu of immediately filing a discovery motion. *Id*. The Court notes that the parties did not first seek an informal settlement conference and expresses its doubts that extrajudicial means were exhausted prior to the filing of the instant discovery motions given that Plaintiff filed his first Motion to Compel just one day after receiving Defendant's responses to his discovery.

Defendant may redact the items specifically listed in Federal Rule of Civil Procedure 5.2(a). In addition, to the extent any of the responsive documents are privileged, pursuant to Federal Rule of Civil Procedure 45(d)(2), Defendant may submit a privilege log describing the nature of each document withheld and reason. Fed. R. Civ. P. 45(d)(2)(A)(ii).

Finally, the Court **ORDERS** additional briefing on Plaintiff's second Motion to Compel (ECF No. 27). As set forth above, Defendant must file, **WITHIN FOURTEEN DAYS**, a brief detailing the contents of the requested files on a category-by-category basis, setting forth its position on whether the information should be produced and if so, what level of protection it should be afforded. Plaintiff shall file his response **WITHIN SEVEN DAYS** of Defendant's brief, setting forth which categories of documents he contends should be produced and why such categories are relevant. There shall be no reply.

**IT IS SO ORDERED.**

February 10, 2011                    /s/ *Elizabeth A. Preston Deavers*
                                     Elizabeth A. Preston Deavers
                                     United States Magistrate Judge